UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JOSE AYALA CASUN,<br> Petitioner,<br><br> v.<br><br>PATRICIA HYDE, Field Office Director; MICHAEL KROL, HSI New England Special Agent in Charge; TODD LYON, Acting Director U.S. Immigration and Customs Enforcement; and KRISTI NOEM, U.S. Secretary of Homeland Security,<br> Respondents. | C.A. No. 25-cv-427-JJM-AEM |

ORDER

## I. BACKGROUND

### A. Factual Background

Jose Ayala Casun petitions for a Writ of Habeas Corpus ordering the Respondents to release him from custody. ECF No. 1. Mr. Ayala is currently being held at Wyatt Detention Facility in Central Falls, Rhode Island after being detained by Immigration and Customs Enforcement ("ICE"). *Id.* at 2. Mr. Ayala originally came to the United States in September 2022 from El Salvador. *Id.* at 1. The U.S. granted him Special Immigrant Juvenile Status ("SIJS") and Deferred Action on October 18, 2023, which expires on October 18, 2027. *Id.* at 2.

Police arrested Mr. Ayala for Domestic Assault and Battery at his home in Lynn, Massachusetts on August 10, 2025. ECF No. 4 at 2. After he posted bail, ICE detained him and initiated removal proceedings. *Id.* at 2-3. The Immigration Judge

set a bond of $8,000, which Mr. Ayala says his family is ready and willing to pay. ECF No. 1 at 2. The next day, ICE filed a Notice of Intent to Appeal Custody Redetermination, which triggered a stay of the bond decision and kept Mr. Ayala in custody until the Board of Immigration Appeals ("BIA") could review the decision. *Id.* at 17.

Mr. Ayala challenges the constitutionality of ICE keeping him in detention despite being ready to post a bond and asks the Court to order his release. *Id.* at 4-5. For the reasons below, Mr. Ayala's Petition for a Writ of Habeas Corpus is GRANTED.

B.  **Statutory and Regulatory Framework**

An applicant for admission under Section 1225, is someone who arrives in the United States or someone who has not been admitted. 8 U.S.C. § 1225(a)(1). Section 1225(b) "authorizes the Government to detain certain aliens *seeking admission into the country*." *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924, at *2 (D. Mass. Sept. 9, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018)). It is clear from a plain reading of the statute that Section 1225 is for people entering the United States; people who do not have status; people who must be inspected and admitted; and/or people seeking asylum. *See* 8 U.S.C. § 1225. In addition, someone is considered "inadmissible" and may be subject to removal if they have not been inspected and admitted, or if they did not meet certain documentation requirements. 8 U.S.C.A. §§ 1182(a)(6)(A), (a)(7)(A)(i).

Section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Sampiao*, 2025 WL 2607924, at *2 (citing *Jennings*, 583 U.S. at 289); 8 U.S.C. § 1226. Section 1226(a) involves permissive detention, while Section 1226(c) involves mandatory detention. *See* 8 U.S.C. §§ 1226(a), (c) ("An alien *may* be arrested and detained…The Attorney General *shall* take into custody…") (emphasis added); *See also Hernandez-Lara v. Lyons*, 10 F.4th 19, 26-27 (1st Cir. 2021).

Section 1226(a)(1) allows a noncitizen to be arrested with a warrant by the Attorney General and be detained pending removal proceedings. 8 U.S.C. § 1226(a)(1). Otherwise, pending removal, the Attorney General can "release the alien on bond…or conditional parole…" 8 U.S.C. § 1226(b)-(c). The noncitizen has a right to request a custody determination hearing before an Immigration Judge. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Bond should only be denied if the government "either (1) prove[s] by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove[s] by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara*, 10 F.4th at 41. If the government cannot meet its burden, then bond must be granted. *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025); *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530, at 4 (D. Me. Aug. 29, 2025).

## II. DISCUSSION

### A. Jurisdiction

The government argues this Court does not have jurisdiction because any action taken under Section 1226 cannot be subject to judicial review. ECF No. 4 at 1, 6; 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.").

Mr. Ayala is not disputing the discretionary judgment exercised by the Immigration Judge. ECF No. 5 at 12. He is contesting his statutory eligibility to be detained. *Id.* At issue here is the automatic stay regulation under 8 C.F.R. § 1003.6. A stay of the Immigration Judge's decision automatically goes into effect when the government appeals the decision to the BIA. *Id.* Therefore, the stay itself is automatic and statutory—the opposite of discretionary. *Id.* Not to mention that the First Circuit has held Section 1226(e) does not strip federal courts of their jurisdiction to review habeas petitions. *Hernandez-Lara*, 10 F.4th at 19 (citing *Jennings*, 583 U.S. at 295-96) (allowing courts to review habeas petitions that challenge "the extent of the Government's detention authority under the 'statutory framework' as a whole"). Courts also have held that Congress did not intend to preempt judicial review, under Section 1226(e), of constitutional challenges to detention. *Campbell v. Chadbourne*, 505 F. Supp. 2d 191, 196 (D. Mass. 2007); *Ozturk v. Trump*, 777 F. Supp. 3d 26, 34 n.1 (D. Mass. 2025).

Since Section 1226(e) does not affect jurisdiction, it should be noted the Court has jurisdiction to review habeas petitions of immigration detainees who claim that

4

they are in custody in violation of their constitutional rights under 28 U.S.C. § 2241(c)(3). Because Mr. Ayala has brought a Fifth Amendment Due Process challenge in his habeas petition, the Court has jurisdiction under 28 U.S.C. § 2241 and 28 U.S.C. § 1331. ECF No. 1 at 3.

### B. 8 U.S.C. § 1226, not § 1225, Applies.

The government argues Mr. Ayala can be detained because he "is an applicant for admission who is not 'clearly and beyond a doubt entitled to be admitted' to the United States." ECF No. 4 at 1. This would be an argument if Section 1225 applied to Mr. Ayala.

Mr. Ayala has been here under SIJS for almost 2 years. ECF No. 1 at 2. A person who is here with SIJS is considered paroled, so the inspection and admission requirement under Section 1182 does not make Mr. Ayala "inadmissible." 8 C.F.R. § 245.1(e)(3)(iii). It is also worth mentioning that failure to meet the documentation requirements does not make someone with SIJS "inadmissible." *Id.* He is also not seeking admission into the United States as he is already here and has had SIJS for nearly 2 years. ECF No. 1 at 2. He is also not seeking asylum. *Id.* Clearly, Section 1225 does not apply to him.

The government argues that, in the alternative, Mr. Ayala's removal is under Section 1226. ECF No. 4 at 1. Because Mr. Ayala was already in the country and a warrant had been issued for his removal, Section 1226 *does* apply. ECF No. 5 at 21. More specifically, Section 1226(a) applies as none of the conditions listed in Section 1226(c) apply to Mr. Ayala. *See* 8 U.S.C. §§ 1226(a), (c). Here, the Immigration Judge

released Mr. Ayala on an $8,000 bond, indicating that the government did not meet its burden in proving Mr. Ayala a danger to the community or a flight risk. ECF No. 1 at 2, 17.

### C. Exhaustion of Administrative Remedies

The government argues Mr. Ayala's petition is premature since the BIA has yet to issue a decision. ECF No. 4 at 7. The Court disagrees. Because there is no statutory requirement for administrative exhaustion, the Court turns to the common-law requirement for exhaustion.

Whereas statutory requirements for exhaustion are mandatory, common-law exhaustion is more permissive and allows the courts discretion to decline or exercise jurisdiction. *Sampiao*, 2025 WL 2607924, at *6 (citing *Brito v. Garland*, 22 F.4th 240, 255-56 (1st Cir. 2021)). Waiving the exhaustion requirement is especially appropriate in circumstances where the petitioner may suffer "irreparable harm" without immediate judicial intervention. *Sampiao*, 2025 WL 2607924, at *6. Being detained pending exhaustion of administrative remedies is irreparable harm. *Id.* (citing *Brito*, 22 F.4th at 256).

Waiver of any exhaustion requirement is warranted here. Mr. Ayala is being detained against his will without clear reason, a clear irreparable harm. Without judicial intervention, Mr. Ayala will remain in detention for 90 days or until the BIA issues a decision. 8 C.F.R. § 1003.6(c)(4). Because the BIA usually takes over 200 days to issue a decision, Mr. Ayala will likely remain in detention until the expiration of the stay at 90 days with unclear reasons for his detention. *Gomes*, 2025 WL

1869299, at *5 (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 2025 WL 1193850, at *5 (W.D. Wash. Apr. 24, 2025) ("[T]he average processing time for bond appeals exceeded 200 days in 2024.")). Judicial intervention is warranted here. Therefore, any exhaustion requirement is waived.

### D. Due Process

Mr. Ayala alleges that his detention violates his Fifth Amendment right to due process. ECF No. 1 at 4-5. The Court agrees. The Fifth Amendment Due Process Clause applies to all persons in the United States regardless of citizenship status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Because Mr. Ayala is entitled to due process, his detention should be looked at through the *Matthews v. Eldridge* balancing test. 424 U.S. 319 (1976); See *Hernandez-Lara*, 10 F.4th at 27-28. The *Matthews v. Eldridge* factors are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

#### i. Private Interest

The private interest, Mr. Ayala's freedom, is very weighty here. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Other cases have noted

that when an individual is confined alongside criminal offenders, when they themselves have not been detained for a criminal offense, the first *Matthews* factor weighs heavily in their interest. *Sampiao*, 2025 WL 2607924, at *10 (citing *Hernandez-Lara*, 10 F.4th at 28 (finding that the first *Mathews* factor weighed heavily in the noncitizen's favor because he was "incarcerated alongside criminal inmates")).

Before being detained by ICE, Mr. Ayala lived freely with his aunt, whereas now he is in a prison with little to no say in his everyday life. "There is no question" that such detention constitutes "a substantial deprivation of liberty." *Bermeo Sicha*, 2025 WL 2494530, at *6 (quoting *Hernandez-Lara*, 10 F.4th at 28). Indeed, the whole point of detention is a deprivation of the liberty interest, which the Constitution seeks to protect. Thus, the private interest factor weighs heavily in Mr. Ayala's favor.

  ii. **Risk of Erroneous Deprivation**

The second factor, the risk of an erroneous deprivation of Mr. Ayala's rights, also weighs heavily in Mr. Ayala's favor. It is highly likely that the BIA will take over 200 days to decide, 90 of which Mr. Ayala will spend in custody. *Gomes*, 2025 WL 1869299, at *5; 8 C.F.R. § 1003.6(c)(4). If the BIA determines the detention was without merit, then Mr. Ayala's detention during those 90 days would be unlawful. An unlawful detention for that long is a high risk of an erroneous deprivation of Mr. Ayala's liberty. Thus, the second factor is quite weighty in Mr. Ayala's favor.

### iii.  Government Interest

The third factor is the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. This factor seems insubstantial comparatively.

For one, the Immigration Judge was ready to free Mr. Ayala on bond. ECF No. 1 at 2, 17. This shows that the government's interest in detention is not very high. The government's low interest is also shown by 8 U.S.C. § 1226 itself. Mr. Ayala's detention is under § 1226(a), which specifies that he "may" be detained. His detention under the statute is permissive, not mandatory. *See* 8 U.S.C. § 1226(a).

In addition, the procedural safeguard in question, freeing Mr. Ayala on bond, seems like a minor burden on the government considering that the Immigration Judge recommended it and detaining someone is quite costly for the government.

Admittedly, the government does have an interest in the "prompt execution of removal orders ... which detention may facilitate." *Hernandez-Lara*, 10 F.4th at 32. But this interest is substantially outweighed by the statute, the Immigration Judge's bond order, and the procedural safeguard of releasing Mr. Ayala on bond. Therefore, the *Matthews* factors weigh heavily in Mr. Ayala's favor. Accordingly, the detention of Mr. Ayala does violate his Fifth Amendment right to due process, and he is entitled to immediate release.

### III.  CONCLUSION

The Court GRANTS Mr. Ayala's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241.  ECF No. 1.  The Respondents are ORDERED to release Jose Ayala Casun from the custody of U.S. Immigration and Customs Enforcement immediately upon his posting of the ordered bond, with no additional conditions beyond those imposed by the Immigration Judge in the August 28, 2025, bond order.  The Respondents are further ORDERED to file a status report on or before October 8, 2025, confirming that Mr. Ayala has been released from custody.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

October 2, 2025